## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY HIDALGO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMATEUR ATHLETIC UNION OF THE UNITED STATES, INC., a New York corporation,<br><br>Defendant. | CASE NO.  19-cv-10545<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Timothy Hidalgo ("Plaintiff") individually and on behalf the Class defined below of similarly situated persons, alleges the following against Amateur Athletic Union of the United States, Inc. ("AAU" or "Defendant"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.      This action seeks redress for AAU's failure to secure and safeguard its customers' personal information, including credit and debit card information.

2.      As alleged herein, AAU's failure to implement or maintain adequate data security measures for customer information, including Personal Information (defined below), directly and proximately caused injuries to Plaintiff and the Class.

3.      In September 2019, AAU publicly disclosed a data breach, which began on October 1, 2018, and ended on July 2, 2019, involving the disclosure of customers' Personal Information

for an unknown number of compromised customer credit and debit card accounts (the "Data Breach").

4.      AAU failed to take reasonable steps to employ adequate security measures or to properly protect sensitive payment Personal Information despite well-publicized data breaches at a variety of large national businesses in recent years, including Target, Home Depot, Arby's, Wendy's, Sally Beauty, Harbor Freight Tools, P.F. Chang's, Dairy Queen, Kmart, and many others.

5.      In September of 2019, AAU began sending letters to its customers informing them that its system was accessed by unauthorized users who were able to capture their Personal Information, including payment card information, entered on AAU's website while conducting online transactions with AAU.

6.      According to AAU, the following sensitive financial and personal non-public customer information was compromised in the Data Breach: (a) names; (b) addresses; and (c) payment card information (debit/credit card number, expiration date, and CVV number) (collectively, "Personal Information").

7.      AAU's security failure enabled intruders to intercept, access and acquire Personal Information from within AAU's systems, and to make unauthorized purchases with consumers' credit and debit cards, while otherwise putting Class members' Personal Information at serious and ongoing risk. The intruders continue to use the Personal Information they obtained as a result of AAU's inadequate security to exploit consumers and Class members throughout the country.

8.      The Data Breach was caused and enabled by AAU's knowing violation of its obligations to abide by best practices and industry standards in protecting customers' Personal

Information. AAU's failure to comply with security standards allowed its customers' Personal Information to be compromised.

9.     The Data Breach was the inevitable result of AAU's inadequate data security measures and cavalier approach to data security. Despite the well-publicized and ever-growing threat of security breaches involving payment card networks and systems, and despite the fact that these types of data breaches were and are occurring throughout various industries, AAU failed to ensure that it maintained adequate data security measures causing Personal Information of its customers to be stolen and/or accessed by unauthorized users.

10.     As a direct and proximate consequence of AAU's negligence, a massive amount of information was obtained from AAU over an extended period of time. Upon information and belief, AAU's Data Breach compromised the Personal Information hundreds of thousands of AAU's customers. Victims of the Data Breach have had their Personal Information compromised, their privacy rights violated, been exposed to the increased risk of fraud and identify theft, lost control over their personal and financial information, and otherwise been injured.

11.     Moreover, Plaintiff and Class Members have been forced to spend significant time associated with, among other things: detecting and expending effort to recuperate fraudulent charges on their debit and credit cards; closing out and opening new credit or debit card accounts; ordering replacement cards; obtaining fraud monitoring services; losing access to cash flow and credit lines; monitoring credit reports and accounts; and/or other losses resulting from the unauthorized use of their cards or accounts.

12.     Rather than providing meaningful assistance to consumers to help deal with the fraud that has and will continue to result from the Data Breach, AAU simply told consumers to carefully monitor their accounts. In contrast to what is and has been frequently made available to

consumers in recent data breaches, AAU has not offered or provided any monitoring service or fraud insurance to date.

13.     Plaintiff retains a significant interest in ensuring that his Personal Information is protected from further breaches, and seeks to remedy the harms he has suffered on behalf of himself and similarly situated consumers whose Personal Information was disclosed as a result of AAU's Data Breach. Plaintiff asserts claims against AAU for violations of state consumer protection statutes, state data breach statutes, negligence, breach of implied contract and unjust enrichment. Plaintiff, on behalf of himself and similarly situated consumers, seeks to recover damages, including actual and statutory damages, and equitable relief, including declaratory and injunctive relief to prevent a recurrence of the data breach and resulting injury, restitution, disgorgement and reasonable costs and attorneys' fees.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than AAU.

15.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over AAU because it is incorporated in New York, it has sufficient minimum contacts with the state of New York, and intentionally avails itself of the consumers and markets within the state through the promotion, marketing, and sale of its products and services.

17.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391 because, inter alia, AAU is incorporated in New York and conducts substantial business in this district.

## PARTIES

**Plaintiff Timothy Hidalgo**

18.    Plaintiff Timothy Hidalgo is a citizen of Woonsocket, Rhode Island.

19.    On or about May 17, 2019, Plaintiff Hidalgo used his bank debit card to purchase a coach's certificate in the amount of $32.00 via AAU's website in anticipation of coaching at an AAU sanctioned event in Florida in June of 2019.

20.    While coaching at the AAU sanctioned event in Florida in June of 2019, Plaintiff Hidalgo's bank contacted him about multiple suspicious transactions on his debit card. Initially, a hold for a small charge was made on the account on June 22 – presumably as a test to determine if the card was active. A second fraudulent transaction in the amount of $15.00 was made on Apple's iTunes.com on June 22. Additional larger fraudulent transactions were also attempted on June 22, but they were flagged and prevented from being completed by Plaintiff Hidalgo's bank.

21.    Upon determining that multiple fraudulent transactions were being attempted, Plaintiff Hidalgo's bank immediately canceled his debit card. This left Plaintiff Hidalgo without access to his debit card for the remainder of his stay in Florida from June 22 through June 25, 2019. During that time, Plaintiff Hidalgo was forced to go hat in hand and borrow money from others also attending the event with much personal embarrassment and inconvenience.

22.    The debit card that incurred the fraudulent charges was the same debit card that was used by Plaintiff Hidalgo to make his May 17, 2019, transaction on AAU's website.

23.    Plaintiff Hidalgo spent approximately 4.5 hours of his time dealing with the ramifications of the AAU Data Breach. This time included working with his bank to identify the

fraudulent charges, canceling and obtaining a new debit card, reviewing his bank statements, and updating his card number on automated billing systems.

24.    In late-September or early-October of 2019, Plaintiff Hidalgo received a Notice of Data Breach letter from AAU informing him that it "identified signs of malicious code on [its] site, play.aausports.org and determined that the code could capture information entered onto the site's checkout page from October 1, 2018 to July 2, 2019."

25.    AAU's letter acknowledged the very real threat that the Data Breach would result in fraudulent charges, identity theft, and other similar risks by further instructing Plaintiff Hidalgo to "remain vigilant" and to keep a "close eye" on payment card activity:

> **What You Can Do.** You can learn more about how to protect against potential fraud in the enclosed "Steps You Can Take to Prevent Fraud and Identity Theft." We encourage you to remain vigilant against incidents of fraud by reviewing your account statements regularly and keeping a close eye on your credit card activity. If you see any suspicious activity, please report it to the bank that issued your credit card.

26.    Had Plaintiff Hidalgo known that AAU would not adequately protect the Personal Information and other sensitive information entrusted to it, he would not have made a transaction on AAU's website using his debit card.

27.    Had Plaintiff Hidalgo known that AAU would not adequately protect the Personal Information and other sensitive information entrusted to it, he would not have transmitted his Personal Information to AAU and/or allowed AAU to store his Personal Information.

28.    As a result of AAU's failure to adequately safeguard Plaintiff Hidalgo's Personal Information, Plaintiff Hidalgo has been injured.

**Defendant AAU**

29.     AAU describes itself as one of the largest, non-profit, volunteer, multi-sport event organizations in the world.  AAU is incorporated in New York, and its headquarters is located at 1910 Hotel Plaza Blvd., Lake Buena Vista, FL 32830.

## FACTUAL ALLEGATIONS

**AAU's Safety and Privacy Guarantees to Consumers**

30.     AAU's website[1] contains an entire page devoted to "Privacy." AAU's Privacy Statement states that it "is committed to protecting your privacy and developing technology that gives you the most powerful and safe online experience."

31.     A section of AAU's privacy page titled "Security of Your Personal Information" states:

> The AAU secures your personal information from unauthorized access, use or disclosure. The AAU secures the personally identifiable information you provide on computer servers in a controlled, secure environment, protected from unauthorized access, use or disclosure. When personal information (such as a credit card number) is transmitted to other web sites, it is protected through the use of encryption, such as the Secure Socket Layer (SSL) protocol.

32.     Despite the foregoing assurances, however, AAU failed to adequately protect Plaintiff's and class members' (defined below) Personal Information.

**The Data Breach**

33.     In September of 2019, AAU began filing with various state Attorneys General sample "Notice of Data Breach" letters that mirrored the language of the letters sent to individual consumers (including Plaintiff). The California sample letter is attached hereto as Exhibit 1.

---

[1] Accessible at: https://aausports.org/page.php?page_id=99393 (last visited November 7, 2019.

34.     The notice explained that "[o]n August 2, 2019, AAU, with the assistance of third-party forensic investigators, identified signs of malicious code on [its] site, play.aausports.org and determined that the code could capture information entered onto the site's checkout page from October 1, 2018 to July 2, 2019."

35.     The notice further explained that "information potentially captured by the code includes the cardholder's name, address, and payment card information -- including number, expiration date, and CVV."

36.     AAU's notice acknowledged the very real threat that the Data Breach would result in fraudulent charges, identity theft, and other similar risks by further instructing recipients of the notice—such as Plaintiff—to "remain vigilant against incidents of fraud by reviewing your account statements regularly and keeping a close eye on your credit card activity.":

> **What You Can Do.** You can learn more about how to protect against potential fraud in the enclosed "Steps You Can Take to Prevent Fraud and Identity Theft." We encourage you to remain vigilant against incidents of fraud by reviewing your account statements regularly and keeping a close eye on your credit card activity. If you see any suspicious activity, please report it to the bank that issued your credit card.
>
> **For More Information.** If you have additional questions or need more information, please call our dedicated assistance line at 855-939-0541, Monday through Friday (excluding U.S. holidays), 9:00 a.m. to 9:00 p.m., Eastern Time. You may also write to AAU at P.O. Box 22409, Lake Buena Vista, FL 32830.
>
> We sincerely regret any inconvenience or concern this incident may cause.

37.     Notably, AAU did not and has not offered customers free credit monitoring. Instead, AAU merely provided customers with contact information for Experian, Transunion, and Equifax as well as for the Federal Trade Commission-Consumer Response Center. AAU made general suggestions to contact local authorities and police, in addition to suggestions on implementing a credit freeze if necessary. Essentially, all of these steps are mandated generalities

used by virtually every company when publishing alerts about data security breaches; AAU failed to make any additional effort to mitigate or remediate the damage caused by the Data Breach.

38.    Based on the foregoing, and on information and belief, Plaintiff and the Class' Personal Information was disclosed, acquired, accessed, downloaded, and/or viewed by unauthorized persons from AAU's websites or systems.

39.    AAU's notice does not give any indication as to the magnitude of the Data Breach or the total number of customers affected across the United States. However, based upon Defendant's filings with various state attorneys general offices, the Data Breach affected well over a quarter of a million individuals.[2]

40.    AAU's own statements confirm that the Data Breach will subject Plaintiff and the Class to continued, future risk of identity theft, fraudulent charges and other damages. For instance, AAU warned consumers "to remain vigilant against incidents of fraud by reviewing your account statements regularly and keeping a close eye on your credit card activity. If you see any suspicious activity, please report it to the bank that issued your credit card."

**Industry Standards and the Protection of Customer Personal Information**

41.    It is well known that customer Personal Information is valuable and frequently targeted by hackers. Despite the risk of a data breach and the widespread publicity and industry alerts regarding the other notable data breaches, AAU failed to take reasonable steps to adequately protect its computer systems from being breached.

---

[2] *See, e.g.*, Office of Attorney General, State of Indiana, 2019 Year-to-Date Data Breach Report, at 1, https://www.in.gov/attorneygeneral/files/Year-to-date%20Data%20Breach%20Report.pdf (last accessed November 13, 2019) (stating that 5,286 Indiana residents and 287,661 individuals total were affected).

42.     AAU is, and at all relevant times has been, aware that the Personal Information it maintains is highly sensitive and could be used for nefarious purposes by third parties, such as perpetrating identity theft and making fraudulent purchases.

43.     As reflected in the privacy statements above from AAU's website, AAU acknowledges that its customers expect it to adequately safeguard its customers' Personal Information.

44.     AAU is, and at all relevant times has been, aware of the importance of safeguarding customers' Personal Information and of the foreseeable consequences that would occur if its data security system was breached.

45.     Financial institutions and credit card processing companies have issued rules and standards governing the basic measures that merchants must take to ensure that consumers' valuable data is protected.

46.     According to the Federal Trade Commission ("FTC"), the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act of 1914 ("FTC Act"), 15 U.S.C. § 45.

47.     In 2007, the FTC published guidelines that establish reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of Personal Information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be

trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

48.    The FTC has also published a document, entitled "Protecting Personal Information: A Guide for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[3]

49.    Furthermore, the Payment Card Industry Data Security Standard ("PCI DSS") is promulgated by the Payment Card Industry Security Standards Council, and consists of twelve actionable steps companies should take to secure data information. The twelve steps of the PCI DSS are:

(1)    Install and maintain a firewall configuration to protect cardholder data;

(2)    Do not use vendor-supplied defaults for system passwords and other security parameters;

(3)    Protect stored cardholder data;

(4)    Encrypt transmission of cardholder data across open, public networks;

(5)    Protect all systems against malware and regularly update anti-virus software or programs;

(6)    Develop and maintain secure systems and applications;

(7)    Restrict access to cardholder data by business need to know;

(8)    Identify and authenticate access to system components;

(9)    Restrict physical access to cardholder data;

(10)   Track and monitor all access to network resources and cardholder data;

(11)   Regularly test security systems and processes;

---

[3]    FTC, *Protecting Personal Information: A Guide for Business* (Nov. 2011), www.stopfraudcolorado.gov/sites/default/files/bus69-protecting-personalinformation-guide-business_0.pdf.

(12)  Maintain a policy that addresses information security for all personnel.

50.    AAU knew of these standards through its participation in the payment card processing networks.

51.    As noted above, AAU should have been aware of the need to have adequate data security systems in place.

52.    Despite this, AAU failed to upgrade, maintain, and operate its data security systems in a meaningful way so as to prevent data breaches. Had AAU maintained its information technology ("IT") systems and adequately protected them, it could have prevented the Data Breach.

53.    As a result of industry warnings, industry practice, and multiple well-documented data breaches, AAU was alerted to, and in turn aware of, the risks associated with failing to ensure that its IT systems were adequately secured.

54.    AAU was not only aware of the threat of data breaches, generally, but was aware of the specific danger of malware infiltration. Malware has been used recently to infiltrate large retailers such as Target, Sally Beauty, Neiman Marcus, Michaels Stores, Home Depot and Supervalu just to name a few. As a result, AAU was aware that malware is a real threat and is a primary tool of infiltration used by hackers.

55.    In addition to the publicly announced data breaches described above, AAU received additional warnings regarding malware infiltrations from the U.S. Computer Emergency Readiness Team, a government unit within the Department of Homeland Security, which alerted

retailers to the threat of malware on July 31, 2014, and issued a guide for retailers on protecting against the threat of malware, which was updated on August 27, 2014.[4]

56.     Despite the fact that AAU was on notice of the very real possibility of consumer data theft associated with its security practices and that AAU knew or should have known about the elementary infirmities associated with its security systems, it still failed to make necessary changes to its security practices and protocols.

57.     AAU, at all times relevant to this action, had a duty to Plaintiff and members of the Class to, among other things: (a) properly secure Personal Information submitted to or collected on AAU's website and on AAU's internal networks; (b) encrypt Personal Information using industry standard methods; (c) use available technology to defend its systems from well-known methods of invasion; (d) act reasonably to prevent the foreseeable harm to Plaintiff and the Class, which would naturally result from Personal Information theft; (e) comply with the industry customs, including PCI DSS standards and FTC guidance, and (f) promptly notify customers when AAU became aware of the potential that customers' Personal Information may have been compromised.

58.     AAU negligently allowed Personal Information to be compromised by failing to take reasonable steps against an obvious threat.

59.     In addition, leading up to the Data Breach, and during the course of the breach itself and the investigation that followed, AAU failed to follow the guidelines set forth by the FTC.

60.     As a result of the events detailed herein, Plaintiff and members of the Class suffered losses resulting from the Data Breach, including loss of time and money resolving fraudulent

---

[4] *See* U.S. COMPUTER EMERGENCY READINESS TEAM, *Alert (TA14-212A): Backoff Point-of-Sale Malware* (July 31, 2014) (revised Sept. 30, 2016), https://www.us-cert.gov/ncas/alerts/TA14-212A.

charges; loss of time and money obtaining protections against future identity theft; financial losses related to the purchases made via AAU's website that Plaintiff and Class members would not have made had they known of AAU's careless approach to cybersecurity; lost control over the value of personal information; unreimbursed losses relating to fraudulent charges; losses and fees relating to exceeding credit and debit card limits, balances, and bounced transactions; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of exfiltrated Personal Information.

61.    These costs and expenses will continue to accrue as additional fraud alerts and fraudulent charges occur and are discovered.

62.    The information exfiltrated from AAU's website can be used to drain debit card-linked bank accounts, make "clone" credit cards, or to buy items on certain less-secure websites.

63.    Even if credit card companies may be responsible for or reimburse some of the unauthorized transactions, consumers affected by the Data Breach may be liable for fraudulent charges below a threshold amount.

64.    To date, AAU does not appear to be taking any measures to assist affected customers other than telling them to simply do the following:

- "remain vigilant"

- "review[] your account statements regularly";

- "keep[] a close eye on your credit card activity"

- "report [suspicious activity] to the bank that issued your credit card";

- obtain a copy of free credit reports;

- contact the FTC and/or the state Attorney General's office;

- enact a credit freeze; and

- create a fraud alert.

None of these recommendations, however, require AAU to expend any effort to protect Plaintiff's and Class Members' Personal Information.

65.    AAU's failure to adequately protect consumers' Personal Information has resulted in consumers having to undertake these tasks, which require extensive amounts of time, calls, and, for many of the credit and fraud protection services, payment of money—while AAU sits by and does nothing to assist those affected by the Data Breach. Instead, as AAU's letter indicates, it is putting the burden on the consumer to discover possible fraudulent transactions.

66.    Plaintiff and the Class Members trusted AAU to protect their payment card data. AAU should take responsibility for the harm that this Data Breach has caused its customers. AAU should provide fair compensation to its customers to ensure that every consumer affected by this Data Breach is adequately protected and is not left out-of-pocket for the monetary losses caused by identity theft the time and money spent responding to this Data Breach.

## CLASS ALLEGATIONS

67.    Plaintiff brings this action on his own behalf, and on behalf of the following Class pursuant to FED. R. CIV. P. 23:

> **Nationwide Class**
>
> All residents of the United States whose Personal Information was compromised as a result of the data breach first disclosed by AAU in September 2019.

68.    The above class is referred to as the "Class." Excluded from the Class are AAU, its affiliates, officers, directors, assigns, successors, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the definition of the Class based on discovery and further investigation.

69.    **Numerosity**: While the precise number of Class members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable,

as the proposed Class appears to over 280,000 members who are geographically dispersed. Upon information and belief, the Data Breach affected people across the United States.

70.    **Typicality**: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through AAU's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their data and Personal Information compromised in the same way by the same conduct by AAU.

71.    **Adequacy**: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class that he seeks to represent; Plaintiff has retained counsel competent and highly experienced in class action litigation; and Plaintiff and his counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

72.    **Superiority**: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress AAU's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

73.    **Existence and Predominance of Common Questions of Fact and Law**:
Common questions of law and fact exist as to Plaintiff and all members of the Class. These
questions predominate over the questions affecting individual Class members. These common
legal and factual questions include, but are not limited to, the following:

- whether AAU engaged in the wrongful conduct alleged herein;

- whether AAU owed a duty to Plaintiff and members of the Class to adequately protect
  their Personal Information and to provide timely and accurate notice of the breach to
  Plaintiff and the Class, and whether it breached these duties;

- whether AAU violated federal and state laws—including but not limited to state and
  federal consumer protection laws and data privacy laws (e.g., Section 5 of the FTC Act,
  15 U.S.C. § 45; The New York Business Law, N.Y. Gen. Bus. Law § 349(a); The
  Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1) thereby
  breaching its duties to Plaintiff and the Class;

- whether AAU knew or should have known that its computer and network systems were
  vulnerable to attack from hackers;

- whether AAU's conduct, including its failure to act, resulted in or was the proximate
  cause of the Data Breach of its computer and network systems resulting in the loss of
  consumers' Personal Information;

- whether AAU wrongfully failed to inform Plaintiff and members of the Class that it
  did not maintain computer software and other security procedures sufficient to
  reasonably safeguard highly-sensitive personal data;

- whether AAU failed to inform Plaintiff and the Class of the data breach in a timely and
  accurate manner;

- whether AAU wrongfully waited to inform Plaintiffs and Class members that their
  sensitive Personal Information was exposed in the Data Breach;

- whether AAU continues to breach duties to Plaintiff and Class;

- whether AAU has sufficiently addressed, remedied, or protected Plaintiff and Class
  members following the Data Breach and has taken adequate preventive and
  precautionary measures to ensure the Plaintiff and Class members will not experience
  further harm;

- whether Plaintiff and members of the Class suffered injury as a proximate result of
  AAU's conduct or failure to act; and

- whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief, and the extent of the remedies that should be afforded to Plaintiff and the Class.

74.     AAU has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

75.     Given that AAU has engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions far outweigh any potential individual questions.

76.     The Class is defined in terms of objective characteristics and common transactional facts; namely, the exposure of sensitive Personal Information to cyber criminals due to AAU's failure to protect this information and adequately warn the Class that it was breached. Class membership will be readily ascertainable from AAU's business records.

77.     Plaintiff reserves the right to revise the above Class definition based on facts adduced in discovery.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

78.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

79.     AAU obtained sensitive Personal Information from Plaintiff and Class members in its provision of online retail transactions.

80.     AAU owed a duty to Plaintiff and the Class to maintain confidentiality and to exercise reasonable care in safeguarding and protecting their Personal Information in AAU's possession from being compromised by unauthorized persons. This duty included, *inter alia*, designing, maintaining, and testing AAU's security systems to ensure that Plaintiff's and Class

members' Personal Information was adequately protected both in the process of collection and after collection.

81.    AAU further owed a duty to Plaintiff and Class members to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts.

82.    AAU owed a duty to Plaintiff and Class members to provide security consistent with industry standards and requirements and to ensure that its computer systems and networks—and the personnel responsible for them—adequately protected the Personal Information of Plaintiff and Class members whose confidential data AAU obtained and maintained.

83.    AAU holds itself out as meeting the highest standards of privacy and safety of consumers' personal information, and thus knew, or should have known, of the risks inherent in collecting and storing the Personal Information of Plaintiff and Class members and of the critical importance of providing adequate security for that information.

84.    AAU's conduct created a foreseeable risk of harm to Plaintiff and members of the Class. This conduct included but was not limited to AAU's failure to take the steps and opportunities to prevent and stop the Data Breach as described above. AAU's conduct also included its decisions not to comply with industry standards for the safekeeping and maintenance of Plaintiff's and Class members' Personal Information.

85.    AAU knew or should have known that it had inadequate computer systems and data security practices to safeguard such information, and AAU knew or should have known that hackers were attempting to access the Personal Information in computer systems such as AAU's.

86.    AAU breached the duties it owed to Plaintiff and members of the Class by failing to exercise reasonable care and implement adequate security systems, protocols, and practices

sufficient to protect the Personal Information of Plaintiff and members of the Class, as identified above. This Data Breach was a proximate cause of injuries and damages suffered by Plaintiff and Class members.

87.     As a direct and proximate result of AAU's negligence, Plaintiff and Class Members have suffered harm to their personal property by way of their sensitive Personal Information—including but not limited to, their payment cards, credit profiles, credit card balances, and bank accounts—being altered, depleted, reduced, compromised and/or accessible by unauthorized users.  As a direct and proximate result of AAU's negligence, Plaintiff and Class Members have also suffered the loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; financial losses related to the purchases made on AAU's website that Plaintiff and Class members would not have made had they known of AAU's careless approach to cyber security; lost control over the value of personal information; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of exfiltrated Personal Information, entitling them to damages in an amount to be proven at trial.

## COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

88.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

89.     Pursuant to Section 5 of the FTC Act, 15 U.S.C. § 45 (among the other state consumer data privacy laws), AAU had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Personal Information.

90.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as AAU, of failing to use reasonable measures to protect Card Information. The FTC publications and orders described above also form part of the basis of AAU's duty.

91.     AAU violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Personal Information and not complying with applicable industry standards as described in detail herein. AAU's conduct was particularly unreasonable given the nature and amount of Personal Information it collected and stored and the foreseeable consequences of a breach, including, specifically, the immense damages that would result to consumers.

92.     The harm that has occurred is the type of harm the FTC Act (and similar state statutes) is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

93.     AAU had a duty to Plaintiff and Class members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class members' Personal Information.

94.     AAU breached its duties to Plaintiff and Class members under the FTC Act (and similar state statutes), by failing to provide fair, reasonable, or adequate data security practices to safeguard Plaintiff's and Class members' Personal Information.

95.     AAU's violation of Section 5 of the FTC Act (and similar state statutes) and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

96.     But for AAU's wrongful and negligent breach of its duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

97.     The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of AAU's breach of its duties. AAU knew or should have known it was failing to meet its duties and that a breach would cause Plaintiff and Class members to suffer the foreseeable harm associated with the exposure of their sensitive Personal Information.

98.     As a direct and proximate result of AAU's negligence *per se*, Plaintiff and Class Members have suffered harm to their personal property by way of their sensitive Personal Information—including but not limited to, their payment cards, credit profiles, credit card balances, and bank accounts—being altered, depleted, reduced, compromised and/or accessible by unauthorized users.  As a direct and proximate result of AAU's negligence *per* se, Plaintiff and Class Members have also suffered the loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; financial losses related to the purchases made on AAU's website that Plaintiff and Class members would not have made had they known of AAU's careless approach to cyber security; lost control over the value of personal information; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of exfiltrated Personal Information, entitling them to damages in an amount to be proven at trial.

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

99.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

22

100.    Plaintiff and Class members whose Personal Information was obtained by AAU in connection with their provision of online retail and payment services have valid, binding, and enforceable implied contracts with AAU.

101.    Specifically, Plaintiff and Class members agreed to the release of their sensitive Personal Information to AAU to be used in connection with its provision of online retail and payment services. In exchange, AAU agreed, among other things: (1) to provide online retail and payment services to Plaintiff and Class members; (2) to take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' Personal Information; and (3) to protect Plaintiff's and Class members' Personal Information in compliance with federal and state laws and regulations and industry standards.

102.    Protection of Personal Information is a material term of the implied contracts between Plaintiff and Class members, on the one hand, and AAU, on the other hand. Plaintiff and Class members consented—implicitly or explicitly—to the release of their sensitive Personal Information to AAU. Had Plaintiff and Class members known that AAU would not adequately protect their Personal Information, they would not have consented to their Personal Information being provided to AAU.

103.    AAU did not satisfy its promises and obligations to Plaintiff and Class members under the implied contracts because it did not take reasonable measures to keep Plaintiff's and Class members' Personal Information secure and confidential and did not comply with the applicable laws, regulations, and industry standards.

104.    AAU materially breached its implied contracts with Plaintiff and Class members by failing to implement adequate data security measures.

Case 1:19-cv-10545-JGK    Document 1    Filed 11/13/19    Page 24 of 31

105.    Plaintiff and Class members fully performed their obligations under their implied contracts with AAU.

106.    AAU's failure to satisfy its obligations led directly to the successful intrusion of AAU's computer servers and stored Personal Information and led directly to unauthorized parties' access and exfiltration of Plaintiff's and Class members' sensitive Personal Information.

107.    AAU breached these implied contracts as a result of its failure to implement adequate data security measures.

108.    Also, as a result of AAU's failure to implement the security measures, Plaintiff and Class members have suffered actual damages resulting from the theft of their Personal Information and remain at imminent risk of suffering additional damages in the future.

109.    Accordingly, Plaintiff and Class members have been injured as a proximate result of AAU's breaches of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

<u>**COUNT IV**</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

110.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

111.    This claim is plead in the alternative to the above contract claim.

112.    Plaintiff and Class Members conferred a monetary benefit upon AAU in the form of monies paid for the purchase of products from AAU's website.

113.    AAU appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. AAU also benefited from the receipt of Plaintiff's and Class members' payment card information, which was utilized by AAU to facilitate payment to itself.

24

114.    The monies for products that Plaintiff and Class Members paid to AAU, were supposed to be used by AAU, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

115.    As a result of AAU's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between products and services offered with the reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for and the inadequate products and services without reasonable data privacy and security practices and procedures they received.

116.    Under principals of equity and public policy, AAU should not be permitted to retain the money belonging to Plaintiff and Class Members because AAU failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws, as well as industry standards and public policy.

117.    AAU should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and data breach alleged herein.

## <u>COUNT V</u>
### Violation of R.I. Gen. Laws § 6-13.1-1 *et seq.*
### (On Behalf of Plaintiff and the Class)

118.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

119.    R.I. Gen. Laws § 6-13.1-2 provides:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.

120.    R.I. Gen. Laws § 6-13.1-1(6) provides in part:

"Unfair methods of competition and unfair or deceptive acts or practices" means any one or more of the following:

\* \* \*

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

\* \* \*

(vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

\* \* \*

(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding;

(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer;

(xiv) Using any other methods, acts, or practices that mislead or deceive members of the public in a material respect;

121.    R.I. Gen. Laws § 6-13.1-3 provides:

It is the intent of the legislature that in construing §§ 6-13.1-1 and 6-13.1-2 due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), as from time to time amended.

122.    AAU's actions as set forth above occurred in the conduct of trade or commerce.

123.    As noted above, the FTC and federal courts interpreting Section 5(a) of the Federal Trade Commission Act have concluded that failing to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data and overstating a business's cybersecurity through misleading privacy policies constitute unfair acts or practices prohibited by

15 U.S.C. § 45(a). *See, e.g., F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 245-47 (3d Cir.

2015); *In re BJ's Wholesale Club, Inc.*, 140 F.T.C. 465 (2005).

124.    By reason of the conduct alleged herein, and by failing to provide reasonable

security measures for the protection of the Personal Information of Plaintiff and the Class, AAU

violated the above stated provisions of R.I. Gen. Laws § 6-13.1-1 *et seq.*

125.    The acts and conduct of AAU as alleged above violated R.I. Gen. Laws § 6-13.1-1

*et seq.* by, among other things:

- failing to maintain sufficient security to keep confidential and sensitive financial information of Plaintiff and the Class from being hacked and exfiltrated;

- misrepresenting material facts to Plaintiff and the Class, in connection with the sale of goods and providing online purchases services, by representing that AAU would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff's and Class members' Personal Information from unauthorized disclosure, release, data breaches, and exfiltration;

- misrepresenting material facts to Plaintiff and the Class, in connection with the sale of goods and providing online purchases services, by representing that AAU did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff's and Class members' personal information; and,

- failing to prevent the Data Breach and promptly notify consumers thereof, failing to maintain the privacy and security of Plaintiff's and Class members' personal information, in violation of duties imposed by and public policies reflected in applicable federal and state laws.

126.    Due to the Data Breach, Plaintiff and the Class have lost property in the form of

their Personal Information and have suffered actual damages. Further, AAU's failure to adopt

reasonable practices in protecting and safeguarding the confidential and sensitive financial

information of its customers has resulted in Plaintiff and the Class spending time and money to

protect against identity theft. Plaintiff and the Class are now at a higher risk of identity theft crimes.

This harm sufficiently outweighs any justifications or motives for AAU's practice of collecting

and storing confidential and sensitive financial information without the appropriate and reasonable safeguards to protect such information.

127.    As a result of AAU's practices, Plaintiff and the Class have suffered injury-in-fact and have lost money or property. As a result of AAU's failure to adopt, implement, and maintain reasonable security procedures, and the resulting Data Breach, Plaintiff and members of the Class have incurred costs and spent time associated with monitoring and repairing their credit and issues of identity theft.

**COUNT VI**
**Violation of N.Y. Gen. Bus. Law § 349(a)**
**(On Behalf of Plaintiff and the Class)**

128.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

129.    N.Y. Gen. Bus. Law § 349(a) provides:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

130.    AAU's actions as set forth above occurred in the conduct of business, trade or commerce.

131.    By reason of the conduct alleged herein, and by failing to provide reasonable security measures for the protection of the Personal Information of Plaintiff and the Class, AAU violated the above stated provision of N.Y. Gen. Bus. Law § 349(a).

132.    The acts and conduct of AAU as alleged above violated N.Y. Gen. Bus. Law § 349(a) by, among other things:

- failing to maintain sufficient security to keep confidential and sensitive financial information of Plaintiff and the Class from being hacked and exfiltrated;

- misrepresenting material facts to Plaintiff and the Class, in connection with the sale of goods and providing online purchases services, by representing that AAU would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff's and Class members' Personal Information from unauthorized disclosure, release, data breaches, and exfiltration;

- misrepresenting material facts to Plaintiff and the Class, in connection with the sale of goods and providing online purchases services, by representing that AAU did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff's and Class members' personal information; and,

- failing to prevent the Data Breach and promptly notify consumers thereof, failing to maintain the privacy and security of Plaintiff's and Class members' personal information, in violation of duties imposed by and public policies reflected in applicable federal and state laws.

133. Due to the Data Breach, Plaintiff and the Class have lost property in the form of their Personal Information and have suffered actual damages. Further, AAU's failure to adopt reasonable practices in protecting and safeguarding the confidential and sensitive financial information of its customers has resulted in Plaintiff and the Class spending time and money to protect against identity theft. Plaintiff and the Class are now at a higher risk of identity theft crimes. This harm sufficiently outweighs any justifications or motives for AAU's practice of collecting and storing confidential and sensitive financial information without the appropriate and reasonable safeguards to protect such information.

134. As a result of AAU's practices, Plaintiff and the Class have suffered injury-in-fact and have lost money or property. As a result of AAU's failure to adopt, implement, and maintain reasonable security procedures, and the resulting Data Breach, Plaintiff and members of the Class have incurred costs and spent time associated with monitoring and repairing their credit and issues of identity theft.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class, respectfully requests that the Court grant the following relief:

A.    Certify this case as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3), and, pursuant to FED. R. CIV. P. 23(g), appoint Plaintiff as Class representatives and his counsel as Class counsel.

B.    Award Plaintiff and the Class appropriate monetary relief, including actual damages, restitution, and disgorgement.

C.    Award Plaintiff and the Class equitable, injunctive and declaratory relief as may be appropriate. Plaintiff, on behalf of the Class, seeks appropriate injunctive relief designed to ensure against the recurrence of a data breach by adopting and implementing best security data practices to safeguard customers' financial and personal information, extend credit monitoring services and similar services to protect against all types of identity theft, especially including card theft and fraudulent card charges, and to provide elevated credit monitoring services to minor and elderly Class members who are more susceptible to fraud and identity theft.

D.    Award Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable.

E.    Award Plaintiff and the Class reasonable attorneys' fees and costs as allowable.

F.    Award Plaintiff and the Class such other favorable relief as allowable under law or at equity.

Dated: November 13, 2019                    Respectfully submitted,

                                            /s/ *William B. Federman*
                                            William B. Federman
                                            (S.D. New York #WF9124)
                                            FEDERMAN & SHERWOOD
                                            10205 N. Pennsylvania Ave.
                                            Oklahoma City, Oklahoma 73120
                                            (405) 235-1560
                                            (405) 239-2112 (facsimile)
                                            wbf@federmanlaw.com

                                            *Counsel for Plaintiff Timothy Hidalgo and
                                            the Putative Class*